# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 06-14042-CIV-MOORE/LYNCH

LOWE'S HOME CENTERS, INC., a North
Carolina Corporation,

      Plaintiff,

vs.

RUSSELL J. FRYMAN, individually, in his
capacity as Trustee of the Virginia Fryman Trust,
and in his capacity as personal representative for
the Estate of Virginia B. Fryman, deceased.

      Defendant.

_____/

## ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment

(DE # 19).

UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being

otherwise fully advised in the premises, the Court enters the following Order.

### I.    Background

Plaintiff, Lowe's Home Centers, Inc. ("Lowe's" or "Plaintiff"), is a North Carolina

Corporation that builds and operates home improvement centers around the country. Defendant

Russell J. Fryman ("Defendant") is trustee of the Virginia B. Fryman Trust (the "Trust"). This

case concerns real property originally owned entirely by the Trust and located on a site in

Highlands County, Florida (the "County"), at the northeast corner of U.S. Highway 27 and

Thunderbird Road (the "Site"). In December 2004, Hull/Storey Acquisition, LLC

("Hull/Storey") executed a contract to purchase 17.37 acres of the Trust's land for $1.9 million.

In February 2005, Hull/Storey assigned all of its rights, interest, and obligations under the

purchase agreement to Lowe's.  In April 2005, Lowe's and the Trust entered an agreement amending the purchase agreement (the "Second Amendment") whereby Lowe's increased the purchase price to $2.224 million in consideration for a proportionate share of an area of the Trust's land intended to be a retention pond ("Retention Area 1" or "Retention Pond 1").

In the Second Amendment, Defendant also agreed to deed approximately 3.67 acres of the Trust's real property to Highlands County (the "County") for the construction of a second stormwater retention pond ("Retention Area 2" or "Retention Pond 2").[1]  The County plans to redirect offsite stormwater runoff into the retention pond, provide treatment and some minor attenuation for the runoff, and then discharge the water onto other real property owned by the Trust.  Existing land development regulations in Highlands County require that a portion of the Trust's real property, the portion into which the stormwater will be discharged, be designated as "wetlands."

In October 2005, while Plaintiff's contractors were in the process of installing the necessary piping and drainage systems for the County's retention pond system, Defendants wrote to Lowe's and told them to cease construction on the Trust's land because Highlands County did not have the necessary access, drainage, and related easements for the construction and operation of the County's retention pond.  Further, the Trust has refused to sign Lowe's proposed final plat which "designates over twenty (20) acres of the Defendants' land as 'wetlands.'"  Def. Mot. at 15.  Because Highlands County could not operate its regional retention pond, Lowe's was delayed in receiving, from Highlands County, a certificate of occupancy to operate its home

---

[1]In the various contracts and other documents the County's pond is also referred to as "Retention Area 2" or "Retention Pond 2."  Retention Pond 1 was intended to service the land purchased by Lowe's and some of the Trust's land.  Retention Pond 2 was intended to service land across U.S. Highway 27.

improvement center, and then Lowe's received only a conditional certificate of occupancy. Assurance Agreement; Def. Mot. at 5–7.

Lowe's brought this action for breach of contract seeking declaratory relief, specific performance, and money damages or, in the alternative, for the Court to declare the common law water rights of the Parties. Lowe's asserts that the contracts require Defendant to (1) "recognize certain access and drainage easements for the operation of a County retention pond that has been constructed upon certain land deeded to the County as part of the real estate conveyance at issue;" and, (2) to "execute a Final Plat lawfully required by the County pursuant to its local ordinances that, among other things, designates certain property owned by the Trust as 'wetlands.'" Pl. Resp. at 1–2.

Defendant filed this Motion for Summary Judgment, arguing that (1) the contract documents do not expressly require the Trust to recognize access and drainage easements to and from the County Pond; (2) the contract documents do not require the Trust to execute the Final Plat in the form required by Highlands County; and, (3) common law water rights would not give Plaintiff a right to construct drainage systems and piping on Defendant's land.

## II.    Standard of Review

The applicable standard for reviewing a summary judgment motion is unambiguously stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any, show that there is no genuine issue as to any
> material fact and that the moving party is entitled to judgment as a

matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id.

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Id. However, the nonmoving party:

> may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## III.    Discussion

### A.    County Pond Easements

"Easements may be created by express grant; by implication; or by prescription." Crigger

4

v. Florida Power Corp., 436 So. 2d 937, 941 (Fla. 5th DCA 1983). In the pleadings, Plaintiff does not argue that an easement was created by implication[2] or by prescription; rather, that the contracts created an easement by express grant.

There are no specific or "magical" words that must be used to create an express easement; all that is necessary are words showing the intention of the parties to create an easement on an identifiable estate. American Quick Sign, Inc. v. Reinhardt, 899 So. 2d 461, 465 (Fla. App. 5 Dist. 2005) (citing Citgo Petroleum Corp. v. Florida E. Coast Ry. Co., 706 So. 2d 383 (Fla. 4th DCA 1998)). Documents that convey easements should be construed in the same manner as contracts according to the rules of contract construction. Reinhardt, 899 So. 2d at 465  (citing One Harbor Fin. Ltd. Co. v. Hynes Props., LLC, 884 So. 2d 1039 (Fla. 5th DCA 2004)).

"[I]n reviewing the documents creating an easement, if the language is clear, concise, and unambiguous, [courts] must give effect to the terms as stated without resort to other rules of construction to ascertain their meaning[;] . . . it is not the function of the court to make, remake,

---

[2]Florida case law provides that an implied easement may be acquired "[w]here a conveyance is made with reference to a plat or map[.]" Modern, Inc. v. Florida, No. 6:03-CV-718-ORL-31KRS, 2006 WL 1627270, at *5 (M.D. Fla. June 8, 2006). However, Plaintiff did not argue that an implied easement was created or cite any law regarding the creation of implied easements. Even if Plaintiff had raised case law about implied easements arising from a conveyance made with reference to a plat or map, the principle would not apply to the present situation. An implied easement by reference to a plat or map is usually granted based on a theory of estoppel; for example, a seller shows the purchaser a plat or map, and the purchaser buys in reliance on the seller's representation of the land as shown on the map or plat. Id. In this case, the original purchase agreement did not have any maps, plats or words contemplating the easements in question or even a second retention pond. The original purchaser, Hull/Storye, later assigned all its rights in the contract to Lowe's, and Lowe's created a development plan for the land. In other words, the maps and exhibits referred to in the contracts were creations of Lowe's based on its intended future development; they were not created by the seller or used to induce the purchaser to buy the land, and they were not intended as a representation of the land in its present state. The contract for purchase of the land was executed by Hull/Storey before Lowe's came in with its development proposal. Further, section 22(h) of the Second Amendment indicates that none of the plats or maps were final. Because the plating was not finalized, the parties were to "close using metes and bounds legal descriptions respecting to the lands and easements to be conveyed and created[.]" 2nd Amend. 22(h).

or alter a document or an agreement for the parties; they must do it themselves." Reinhardt, 899

So. 2d at 465 (citing Claughton Hotels, Inc. v. City of Miami, 140 So.2d 608 (Fla. 3d DCA

1962)).  On the other hand, "[i]f the provisions are ambiguous, extrinsic evidence may be

examined to determine the intent of the parties at the time the document establishing the

easement was created." Reinhardt, 899 So. 2d at 465 (citing Kotick v. Durrant, 143 Fla. 386, 196

So. 802 (1940); Laboratory Corp. of Am.; Meadows Country Club, Inc. v. Unnever, 702 So. 2d

586, 588 (Fla. 2d DCA 1997)).

  The Parties each point to several different contractual provisions to support their claims

of whether or not an easement was expressly created.  The Court must first determine whether

these provisions are ambiguous before the Court can consider any extrinsic evidence of the

parties intent.  Reinhardt, 899 So. 2d at 465.

  First, Defendant focuses on the Second Amendment to the Purchase and Sale Agreement

("Second Amendment"), which Lowe's and the Trust signed on or about April 11, 2005.  The

Second Amendment provides, "Buyer and Seller have been required to provide Retention Area 2

(depicted as such on Exhibit A, and consisting of approximately 3.67 acres) to Highlands

County, Florida, to satisfy certain permit conditions." 2nd Amend. 22(a).  It further provides,

"[i]t is expected that Retention Area 2 will be deeded to Highlands County or an entity

designated by Highlands County[;] . . . [the Trust] shall convey title to an entity designated by

Highlands County." 2nd Amend. 22(g).  It is apparent from these portions of the Second

Amendment that the Parties intended to obligate the Trust to convey the land designated for

Retention Area 2 to Highlands County.  Further, it appears that Defendant understood that

Highlands County planned to construct a retention pond on the land.  However, the above-quoted

contractual provisions do not expressly provide for easements to operate the retention pond.

Section 22(c) of the Second Amendment contractually imposed two obligations on Plaintiff: (1) that Lowe's would seek permits and authorizations to construct the retention ponds; and (2) that if Lowe's obtained the permits and authorizations and a grant of $700,000, then Lowe's would be obligated to "cause [Retention Pond 2] **and related collection and other systems** to be constructed . . . in accordance with approved plans, and generally as depicted on Exhibit A." 2nd Amend. 22(c) (emphasis added). This provision of the contract shows that the Parties contractually obligated Lowe's to cause Retention Pond 2 and its "related collection and other systems" to be constructed assuming certain conditions were met. "Related collection and other systems" would require easements allowing stormwater to be routed through the Trust's land into the retention pond and discharging it from the pond back onto the Trust's land. However, nothing in section 22(c) purports to impose any obligation on the Trust, nor does it mention any conveyance of rights or interests in the Trust's property. No specific words are required to convey an easement, but there must be some contractual language which purports in some way to convey the interest. Reinhardt, 899 So. 2d at 465 ("it is not the function of the court to make, remake, or alter a document or an agreement for the parties; they must do it themselves.").

Section 22(e) of the Second Amendment provides, "[a]t the closing, there shall be executed and delivered appropriate easement documents . . . so as to provide for the ingress and egress to Retention Areas 1 and 2 . . . and other customary terms for similar easements." 2nd Amend. 22(e). This section specifically mentions the creation of access easements for the ingress and egress to Retention Area 2. However, this section does not mention drainage easements.

7

Further, the Parties agreed that appropriate easement documents would be executed at the closing.

Section 22(h) of the Second Amendment obligates the Parties to cooperate in "the execution and recordation of a Plat reflecting a legal subdivision of all the land in substantial conformity with Exhibit A." 2nd Amend 22(h). Exhibit A depicts the access and drainage easements on the Trust's lands necessary for the operation of the Retention Pond 2 System. 2nd Amend. Ex. A; Pl. Resp. at 5 n.5. However, because closing was expected to occur before the final plat was executed, section 22(h) required that "the parties shall close using metes and bounds legal descriptions respecting to the lands and easements to be conveyed and created as provided herein and otherwise as contemplated by the plat." 2nd Amend. 22(h).

In May, 2005 and in conjunction with the closing, Lowe's counsel sent three extra agreements to the Trust for execution: the Easement and Restriction Agreement, The Pond Easement Agreement, and the Cooperation Agreement. It appears that the Parties understood, at the time of entering into the Second Amendment, that these agreements would follow the Second Amendment and be entered into separately in conjunction with the closing. Breed Depo. at 176–77 (indicating that the Easement and Restriction Agreement and Cooperation Agreement were entered into on May 13th, 2005 in conjunction with the closing); Fryman Affidavit ¶4; Def. Mot. at 10.

The Easement and Restriction Agreement uses specific language expressly granting to Lowe's stormwater drainage easements for the operation of Retention Pond One. Easement and Rest. §1(f). Lowe's and the Trust executed the Easement and Restriction Agreement on or around May 13, 2005; Highlands County was not listed as a party to the agreement. Easement

8

and Rest.; Breed Depo. at 176–77. The Pond Restriction Agreement uses specific language
expressly conveying easements to Highlands County for the purpose of allowing it to construct
and maintain a retention pond and to allow Highlands County a means of ingress and egress to
and from the County's retention pond. Pond Easement Agreement §§1–3; Def. Mot. at 10 ("If
this agreement had been fully executed by the Trust and Highlands County, it would have
expressly required the Trust to convey to Highlands County certain access and drainage
easements and collection systems related to and connected to the County Pond"). The Pond
Easement Agreement was meant to be an agreement between the Trust and Highlands County;
Lowe's was not listed as a party to the agreement. That Plaintiff's attorneys sent both of these
easement agreements to the Trust in May in connection with the closing shows that Lowe's
understood that the Second Amendment had not clearly identified the easements and that such
easements were to be described with more specific language at the closing.

The Pond Easement Agreement was never fully executed between the Trust and
Highlands County; Defendant's signature is the only signature that appears on the agreement.
Defendant asserts that his signature appears on the Pond Easement Agreement because he
executed a signature page to his counsel prior to reviewing the agreement with the instruction not
to deliver a signed copy of the agreement to Highlands County without his express authorization.
Fryman Affidavit ¶4. Defendant asserts that upon reviewing the Pond Easement Agreement, he
instructed his counsel not to forward the agreement because he did not agree to the terms and
conditions contained therein. Fryman Affidavit ¶4. The copy of the Pond Easement Agreement
(DE # 19-8) attached to Plaintiff's Motion for Summary Judgment (DE # 19) has the words "the
sufficiency of which is hereby acknowledged" crossed out in ink; these words were originally

9

intended to indicate that the Trust had received sufficient consideration in exchange for the easement. Defendant's initials appear next to the line crossing out the words (*see* DE # 19-8).

Defendant believed, at least at the point he crossed out those words, that the Trust should receive some extra compensation in consideration for the easements related to the County's retention pond. Pond Easement Agreement (DE # 19-8) at 1. Defendant argues in his Motion and Reply that the County should exercise eminent domain and take the easements for fair market value; alternatively, Defendant suggests that Lowe's or the County should have offered some additional money for the easements. Def. Mot. at 18–19; Def. Reply at 9–10. There is no indication on the record that either Lowe's or Highlands County contacted Defendant about finalizing the Pond Easement Agreement after Lowe's initially sent the contract to Defendant; rather, it appears that Lowe's just assumed the contract had been executed and began working on installing the piping for retention pond two. Pl. Resp. at 8

The Easement and Restriction Agreement was executed and reiterates that "Retention Area Two was to be made available by Fryman to Highlands County, Florida as the site of a regional retention pond, and Fryman has agreed to this." Easement and Rest. Ex. C n.1. The Parties attached a site plan diagram on Page 3 of Exhibit C to the Easement and Restriction Agreement. The site plan in Exhibit C delineates various easements on the site, including access and drainage easements leading to and from Retention Area Two. However, note 3 of Exhibit C states, "Site Plan details [including building locations, sizes, parking fields and drive lanes and the like] are for illustrative purposes only, and do not constitute binding commitments unless such commitments are otherwise set forth in the Agreement to which this Exhibit is attached." The language in note 3 prevents the Court from enforcing easements that appear on the site plan,

10

unless some other contractual language committed the Parties to recognize the easements.

Section 3 of the of the Easement and Restriction Agreement provides, "Lowe's shall . . . construct all improvements for the Reciprocal Access Easement and the Common Stormwater Facilities as generally depicted on the Site Plan and in accordance with the plans and specifications . . . identified on PLAN EXHIBIT attached hereto and made a part hereof, which plans and specifications have been approved by the parties[.]" Easement and Rest. §3.  The PLAN EXHIBIT that was incorporated depicts the access and drainage easements related to Retention Area Two and the Regional Pond 2 System and are the same as those referred to on page 2 of Exhibit C.  Keefe Affidavit ¶¶6–8; Pl. Resp. at 7.  However, the term "Common Stormwater Facilities" is defined and used in the Agreement as referring specifically to the facilities "to be constructed on Retention Area One for the common and non-exclusive benefit of the Lowe's Property and the Fryman Property[.]"  Easement and Rest. §1(f).  Further, the Easement and Restriction Agreement as a whole appears to be primarily concerned with securing easements to Lowe's for the operation of Retention Pond 1 and its stormwater facilities, while the Pond Easement Agreement, in contrast, appears to be the agreement intended to cover the easements necessary for the County to operate Retention Pond 2 and its stormwater facilities. Therefore, even though the agreement incorporates the PLAN EXHIBIT which depicts access and drainage easements to Retention Area 2, it appears that with the Easement and Restriction Agreement the Parties intended to incorporate only the portions depicting facilities to be constructed and used by Retention Area One.

Plaintiff also refers to the permit application it submitted to Southwest Florida Water Management District for the development project.  Plaintiff argues that the permit application

11

shows Defendant was aware of the intended purpose of Retention Area 2 and had intended to grant easements for that purpose. Pl. Resp. at 4, 7. However, the permit application is not a contract between Lowe's, the Trust, or Highlands county; therefore, it is only extrinsic evidence and cannot be considered when Plaintiff has been unable to point to an ambiguous contractual provision.

The undisputed facts in this case lead to the inescapable conclusion that access and drainage easements have not been expressly granted to Highlands County or Lowe's for the operation of Retention Area 2. The contracts clearly defined the intentions of the parties as to several important purposes, but did not expressly provide for drainage easements to the County's retention pond. Lowe's is a sophisticated party that has been involved in many other contracts for the purchase of land. A sophisticated party to a contract has the burden of ensuring that the contract specifically covers and provides for each of his expectations. Even if the Court assumes, and it seems likely, that the Trust knew why Highlands County wanted to own Retention Area 2 and to what purpose it would be used, it was still Lowe's or Highlands County's burden to ensure that all their expectations were provided for in the contract. Further, it appears that Defendant legitimately thought that Lowe's or Highlands County intended to bargain separately for the easements, and that any easements would be conveyed in a separate contract. Lowe's even sent another contract, the Pond Easement Agreement, to Defendant around the closing which, if executed, would have specifically provided for the easements.

**B.   Designation of Land as Wetlands**

The Parties dispute whether Defendant is in breach of contract for failure to sign the final

12

plat submitted by Plaintiff.[3] Section 22(h) of the Second Amendment states:

> The provisions of this paragraph shall expressly survive the closing. Seller and Buyer shall cooperate in the platting of Seller's lands; this will include the execution and recordation of a Plat reflecting a legal subdivision of all the land[.] . . . The cooperation agreement shall be included in an instrument recorded in the public records at the time of the closing. Each of Buyer and Seller acknowledge and agree that the post-closing plat recordation is of critical importance to each of the parties, and the parties shall in all respects whatsoever act promptly and in good faith in the cooperative effort to insure that the plat is proceeding, approved and executed as soon as reasonably possible. . . . Buyer [sic] [it appears the Parties meant "Seller" here instead of Buyer] covenants and agrees to execute promptly any and all documents (including the plat) as and when requested by Buyer. . . . The Parties shall delete from the face of the plat any labels or references to "wetlands" in so far as the labels refer to the property then owned by Seller; Seller shall not be required to execute a plat that designates lands then owned by him as "wetlands."

2nd Amend. 22(h) (emphasis added). In sum, the Parties agreed (1) to work together, execute, and record as quickly as possible a "legal subdivision" plat of the land, and (2) that Defendant would not be required to execute a plat that designates any of his land as "wetlands." However,

---

[3]The dispute is over contractual obligations between Lowe's and Defendant. Even if Defendant was not contractually required to execute the plat designating his land as "wetlands," he or any subsequent owner of the land could still be required to designate the lands as "wetlands" based on Highlands County Land Development Regulations.

Highlands County's land development regulations and Highlands County by its Board of County Commissioners legally require that the Parties designate around 20 acres of Defendant's land as "wetlands." Land Development Regulations (DE #7 Ex. 11); Assurance Agreement (DE #19-3).

"Where two clauses of a lease are repugnant to each other and cannot stand together, the first shall remain and the latter shall fall." Petrou v. Wilder, 557 So. 2d 617, 618 (Fla. 4th DCA 1990); Boden v. Atlantic Federal Savings and Loan Association, 396 So.2d 827, 829 (Fla. 4th DCA 1981); 11 Fla. Jur 2d Contracts § 158.

The first provisions of section 22(h) of the Second Amendment require that the parties cooperate and execute a final plat "reflecting a legal subdivision" of the land. Because Highlands County's land development regulations and Highlands County by its Board of County Commissioners have legally required that a portion of Defendant's lands be designated as "wetlands," the first portion of section 22(h) of the Second Amendment expressly requires that Defendant "execute promptly" the plat sent by Lowe's depicting the required portion of Defendant's lands as "wetlands." The final portion of section 22(h) is in direct conflict to the earlier provisions, because it states that Defendant is not required to execute any plat that designates a portion of his land as "wetlands." Under the circumstances, there appears to be no way to reconcile these provisions, especially considering Highlands County has made it clear that they will not allow Defendant to be released from the requirement of designating this portion of his lands as "wetlands." Assurance Agreement (DE # 19-3). Because these provisions cannot stand together, the first provisions remain and the latter falls. Petrou, 557 So. 2d at 618. Therefore, Defendant is required to execute the plat even though it designates a portion of his land as "wetlands."

14

This outcome is consistent with the overall purpose of section 22(h).  Def. Mot. at 9 (summarizing the purpose of 22(h) as "to mutually agree that Lowe's and the Trust would cooperate in the platting of the Trust's Property(¶22.h)").  As Defendant acknowledges, the main purpose of the Parties was to ensure that a legal plat was recorded.  It is fitting that the primary purpose of 22(h) prevails over the repugnant clause preventing the finalization and recordation of the plat.  Further, contracts requiring something illegal or against public policy are generally not enforceable, and it would be against public policy for Defendant to be able to contract with a third party not to be bound by the requirements of Highlands County's Land Development Regulations.

Additionally, when a new contract is executed dealing with the subject matter of only a portion of an earlier contract, the original contract remains in effect for all obligations except for where the new contract is inconsistent with the earlier contract.  Franz Tractor Co. V. J.I. Case Co., 566 So. 2d 524, 525 (Fla 2nd DCA 1990); Acequia, Inc. v. Prudential Ins. Co. of America, 226 F.3d 798, 807 (7th Cir. 2000).  The Cooperation Agreement was executed subsequent to the Second Amendment and requires that the properties be "subdivided in accordance with the laws of Florida and the County," and that the plat be "processed, approved and recorded in conformity with law."  Cooperation Agreement at 1–2.  This contract supercedes inconsistent portions of the Second Amendment, which appears to be only the "anti-wetlands" provision.  Further, the Cooperation Agreement states a new agreement that the Parties will "accept changes lawfully required by the County as a condition to recording the plat."  Id. at 2.  Because Highlands County has lawfully required Defendant to designate this portion of land as "wetlands" as a condition to recording the plat, Defendant is obligated to accept this change and execute the plat.

### C.   Common Law Water Rights

In the Count IV of the Amended Complaint, Plaintiff seeks "a declaration as to the parties' respective common law water rights." Amend. Compl. ¶73. Defendant states only that Highlands County should not be granted easements for the operation of the retention pond. Plaintiff counters that Highlands County will own the land regardless of the outcome of the case, so it is entitled to know its common law water rights. The Parties did not cite any law regarding common law water rights. Defendant has not met his burden of showing he is entitled to summary judgment on this count.

### IV.   Conclusion

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (DE # 19) is GRANTED IN PART and DENIED IN PART. To the extent the motion requests summary judgment that the contracts do not convey easements for the operation of Retention Pond 2, the motion is GRANTED. To the extent the motion requests summary judgment that the contracts do not require him to sign a plat designating some of his land as "wetlands," the motion is DENIED; Summary Judgment is entered in favor of Plaintiff on this point. To the extent the motion requests summary judgment on Count IV, the motion is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this 14th day of August, 2007.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:   All counsel of record